**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210500-U

Order filed June 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | Appeal No. 3-21-0500 Circuit No. 21-DT-124 |
| MATTHEW T. ROWLEE, | ) ) | The Honorable H. Chris Ryan, Jr. |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McDADE delivered the judgment of the court.
Presiding Justice Holdridge concurred in the judgment.
Justice Brennan, specially concurred.

_____

**ORDER**

¶ 1    *Held*:    The circuit court's denial of defendant's motion to rescind statutory summary suspension based on the untimeliness of the rescission hearing is affirmed because the relevant delays could be properly attributable to defendant.

¶ 2    Defendant initially filed a *pro se* petition to rescind the statutory summary suspension of his driving privileges based on four substantive grounds addressing his arrest and the testing performed by the police. Later, he filed a *pro se* motion to rescind his statutory summary

suspension based solely on the ground that the State failed to hold a hearing on his petition to rescind within the applicable 30-day deadline. In this appeal, we consider whether the trial court erred in denying defendant's motion to rescind his statutory summary suspension based on the State's alleged failure to hold a hearing on his petition to rescind within the applicable 30-day deadline. Because defendant was not prepared to proceed on the rescission petition at any time prior to that deadline, the delay beyond 30 days was not properly attributable to the State, and the motion was properly denied. Accordingly, we affirm the trial court's ruling.

¶ 3                                  I. BACKGROUND

¶ 4        On March 26, 2021, defendant Matthew Rowlee was charged with driving under the influence (DUI) (625 ILCS 5/11-501(a) (West 2020)) and issued a "Warning to Motorist" informing him that he was subject to the statutory summary suspension of his driver's license if he failed to submit to all requested chemical testing. In his sworn report, the arresting officer asserted that he had reasonable grounds to believe defendant was guilty of DUI when he was found in the driver's seat of a "heavily damaged vehicle" at the scene of a serious traffic accident. The officer reported that defendant had "slow, thick tongued, mumbled speech, inability to divide attention, slow/lethargic mannerisms, poor balance, low hanging eyelids, and glassy eyes." Defendant's confirmation of statutory summary suspension was effective on May 11, 2021, and he was notified he had 90 days after being served with a notice of statutory summary suspension to seek judicial review.

¶ 5        Defendant filed a timely *pro se* petition to rescind his statutory summary suspension on May 3, triggering the State's obligation to hold a hearing by June 2. That petition was based on four allegations: (1) the arresting officer lacked reasonable grounds to believe defendant had committed DUI; (2) defendant was not given the proper warnings; (3) defendant did not refuse to

2

submit to the requested tests; and (4) the tests did not show that defendant's blood alcohol concentration was over the legal limit. The State was ordered to tender the discovery requested by defendant by May 31 and made that tender on May 4. A hearing on his petition was set for May 21.

¶ 6    The appellate record does not contain a transcript of the May 21 hearing, but defendant attached a transcript of that hearing, labeled "Exhibit A" to a motion to rescind statutory summary suspension filed on August 10 that does appear in the record. According to that transcript, Associate Judge Michael C. Jansz explained to defendant that as a *pro se* litigant, he would be held to the same standards as an attorney and asked him if he was ready to proceed on his petition to rescind. Defendant indicated he was not ready because he could not open files on the four disks the State had tendered in response to his discovery request for all relevant video, electronic, audio, or telephonic surveillance. The State indicated that it had provided defendant with all of the videos in its possession and it did not know if additional videos existed. It added that one of the videos provided "show[ed] exactly what happened" at the scene.

¶ 7    The court asked the State to show defendant the tendered videos and offered to continue the case to the next week. Defendant asked that any delay be attributed to the State. The State argued that the delay should be taxed to defendant because he had the disks for weeks but had not notified the State prior to the hearing that he could not view them. The trial court then took a lunch recess, directing the State to show defendant the videos on the disks during the break. After the recess, the State reported that all the disks had played without problem and that defendant had been able to review photographs and videos that he could not access earlier. Because no additional relevant information could be gleaned from any other alleged videos that

could have shown the stop from other angles, the State sought to proceed with the hearing that day.

¶ 8     Defendant asserted that he needed more time to review the booking room video and requested "additional discovery that I believe should have been tendered," specifying a 911 "call-in from a citizen" and the "things that occurred at the Spring Valley hospital by the officer." When asked if he had issued subpoenas for any of that evidence, defendant admitted that he had not. The State maintained that it already tendered all videos of the traffic stop and the prearrest interaction between defendant and the police in its possession and that those materials were sufficient for him to proceed with the hearing. It asserted that if he wanted hospital surveillance video or any other videos that he thought may have been taken, he needed to request a continuance and subpoena them himself because the State had already fulfilled its obligation to tender all evidence in its possession tending to prove or disprove guilt. Defendant countered that the caselaw on video surveillance and exculpatory evidence required the State to tender all evidence that he believed "should" be in its possession.

¶ 9     The trial court denied defendant's request to order the State to tender the hospital surveillance video, noting that the hospital was a third party that was outside the State's control. The court explained that defendant could issue a subpoena seeking the video himself. The judge also gave defendant another copy of the sworn report because he could not find his. The court then continued the hearing to permit defendant to pursue the other videos he wanted, stating, "[y]ou have a video that shows the stop." The judge also commented that, in his experience, it would be unusual for the State to possess videos showing additional views of the stop.

¶ 10     The court then asked if a one-day continuance would be enough to allow defendant to review the evidence and proceed on his petition to rescind. Defendant answered that he believed

4

a ruling was necessary on the availability of the additional videos he was requesting and that the delay should be attributed to the State. The State countered that defendant was held to the same standard as an attorney and an attorney would have informed it about any difficulty in viewing the videos before the day of the hearing. It noted that defendant had the disks well in advance of the hearing and that it had no difficulty playing them that day. The State insisted it should not be charged with the delay when it had satisfied its duty to provide the evidence in its file. Defendant replied that he did not believe it was his burden to locate potentially exculpatory evidence.

¶ 11        The trial court found that defendant had received 10 to 12 items from the State and failed to notify it of any problems with them before the hearing. The court added that the State had no duty to track down the additional evidence defendant requested and that if he wanted more time to review additional evidence, he would be attributed with the delay. The judge then continued the cause until June 7 to give defendant time to review the videos and the State time to ensure that all requested evidence in its possession had been tendered.

¶ 12        On June 7, Judge Jansz recused himself on his own motion, and the cause was reassigned to Judge Cynthia M. Raccuglia. On the same day, defendant filed a motion to continue the case until July 12, which was granted. He filed a motion for substitution of judge as of right on July 7. His substitution motion was granted the next day, and the case was reassigned to Judge H. Chris Ryan, Jr.

¶ 13        The parties reconvened on July 12 to hear defendant's petition to rescind. The State announced that it was ready to proceed, but defendant asserted that discovery issues remained because the tape of a 911 dispatch call had not been tendered. The State maintained that it had tendered all discovery in its possession and argued that defendant had not raised the matter prior to the hearing despite the parties having discussed discovery issues on five occasions. The State

5

explained that it requested audio of the 911 call from the Peru Police Department on May 24 but had not received it. Noting that an officer from the Peru Police Department was present in the courthouse, the State offered to inquire about the availability of the 911 tape.

¶ 14    After talking to the officer, the State reported that the police department was having trouble obtaining material from dispatch because the department was moving. Because the officer believed the tape could be obtained, the trial court continued the hearing until August 13. Defendant asked that the delay be attributed to the State. The State responded that he should have contacted it before the hearing after Judge Jansz told him that any additional discovery requests were "on his clock." Because the trial court could not find "any vexatious attitude on the State's part" and believed that it would provide any evidence that it could obtain, the court decided to "reserve [the attribution issue] for a later date." However, on August 10, defendant filed his "Motion to Rescind Statutory Summary Suspension", alleging delay.

¶ 15    In that motion, defendant argued that he was denied a timely hearing on his petition to rescind when the original May 21 hearing was continued until June 7, taking it outside the statutorily mandated 30-day window. He claimed that the State was responsible for the delay because it had failed to tender all the requested discovery materials. When the parties appeared at the scheduled August 13 hearing, defendant indicated that he wanted to proceed on only his motion to rescind statutory summary suspension and was unable to proceed on his petition to rescind because one of his witnesses was unavailable.

¶ 16    To support his motion to rescind, defendant recited the trial record, stating that he was arrested on March 26 and given a notice to appear on April 28, making his discovery motion on that date. He then filed his petition to rescind on May 3. After he raised "several discovery issues" at the May 21 hearing on his rescission petition, the case was continued to June 7, 35

6

days after that petition was filed. During that hearing, defendant agreed to a continuance until July 12. On that date, he discovered the case had been reassigned to Judge Raccuglia and agreed to another continuance so he could file a substitution motion "for [his] own reasons." When he did not receive the 911 call recording by July 12, the case was continued until August 13. Based on those facts, defendant asserted that the hearing on his rescission request was untimely and his motion to rescind should be granted.

¶ 17　　　The State countered that "every continuance and multiple hearings that we have had have been on the motion of the defendant." It noted that its discovery was tendered on May 4, within a week of defendant's discovery request and weeks before the May 31 due date. It was also prepared to proceed on the petition at the original May 21 hearing. Despite having received the tendered discovery 15 days before the hearing, defendant failed to notify the State that he could not access those files before the day of the hearing. Although the State demonstrated during a recess that the disks were fully operational, defendant remained unprepared to proceed that afternoon, and Judge Jansz's order attributed the delay to defendant. Defendant did not raise the issue of the missing 911 tape until the next scheduled hearing on July 12.

¶ 18　　　When defendant continued to assert that the 30-day deadline required a hearing to be held on his petition by June 3, the State averred that it had been ready to proceed on May 21 and that defendant was continuing to demand evidence that it would not ordinarily have in its file. Moreover, Judge Jansz had directed defendant to contact the State promptly with any additional discovery issues to avoid further delays, but defendant waited until the next hearing to update the State about materials that he believed were still missing.

¶ 19　　　The trial court concluded that defendant was responsible for some of the underlying delays, making them not solely attributable to the State. The judge stated that "I just can't find

7

the 30-day violation. I just can't at this time. I'm always happy to revisit things, but I really can't find it at this point." Accordingly, he denied defendant's motion to rescind and asked both sides if they were prepared to go forward on defendant's petition to rescind. The State answered that it was ready, but defendant replied that he was not ready because he had not been able to contact a witness from the Perfectly Flawed Foundation. Despite the judge's offer to allow defendant to start his argument and then present that witness on another day, defendant chose to wait because he had also not yet subpoenaed any of his other witnesses. Defendant agreed to setting a status date of August 20 that would allow him to determine when his witness from the Perfectly Flawed Foundation was available and to obtain a response from the Law Enforcement Training Standards Board. At the status hearing, the case was continued until September 29.

¶ 20    Although the appellate record does not include a report of proceedings from the September 29 hearing on defendant's petition to rescind, it shows that an order denying that petition was entered on that date. Defendant filed a timely notice of appeal.

¶ 21                                II. ANALYSIS

¶ 22    Initially, we must clarify the relationship between the ruling appealed by defendant, namely, the September 29 denial of his *pro se* petition to rescind his statutory summary suspension, and the supporting arguments on which he relies. Defendant's petition to rescind was filed on May 3, and it contained several allegations: (1) the police lacked reasonable grounds to believe he committed DUI; (2) the arresting officer failed to give him proper warnings; (3) defendant did not refuse to submit to, or complete, any requested chemical tests; and (4) the result of the tests submitted by defendant did not show a blood alcohol concentration of 0.08 or higher. His appellate brief, however, does not mention any of those grounds.

8

¶ 23    Instead, defendant's appellate brief relies on arguments presented in his August 10 motion to rescind his statutory summary suspension. There, he asserted that his statutory summary suspension should be rescinded because the hearing on his rescission petition was not held within the 30-day statutory deadline. Due to this intermingling of defendant's petition to rescind and his motion to rescind, we must review the propriety of the denial of defendant's motion because if that ruling was made in error, the denial of his petition was also erroneous.

¶ 24    Section 2-118.1(b) of the Illinois Vehicle Code provides that:

> "[w]ithin 90 days after the notice of statutory summary suspension or revocation served under Section 11-501.1, the person may make a written request for a judicial hearing ***. The request to the circuit court shall state the grounds upon which the person seeks to have the statutory summary suspension or revocation rescinded. Within 30 days after receipt of the written request or the first appearance date on the Uniform Traffic Ticket issued *** the hearing shall be conducted by the circuit court having jurisdiction. This judicial hearing, request, or process shall not stay or delay the statutory summary suspension or revocation. The hearings shall proceed in the court in the same manner as in other civil proceedings." 625 ILCS 5/2-118.1(b) (West 2020).

If a hearing is not held within the statutory 30-day period, the court must rescind the summary suspension unless the delay was caused by the defendant. Any delay that is properly attributable to the defendant will extend the 30-day deadline. *People v. Bywater*, 223 Ill. 2d 477, 486-88 (2006).

¶ 25    Generally, a reviewing court will reverse a ruling on a petition to rescind a statutory summary suspension only if it is against the manifest weight of the evidence. *People v. Schaefer*, 343 Ill. App. 3d 159, 162 (2003). A ruling is manifestly erroneous only if the opposite conclusion is clearly evident or if the ruling is unreasonable, arbitrary, or not based on the evidence. *In re D.F.*, 201 Ill. 2d 476, 498 (2002).

¶ 26    Defendant first argues that rescheduling the May 21 hearing on his petition to rescind to June 7 put it outside the 30-day statutory deadline of June 2 and that the 5-day delay cannot properly be attributed to him. To review that contention, we must examine the events leading up to the June 7 hearing.

¶ 27    Defendant's *pro se* petition to rescind was filed on May 3, and a hearing on that petition was initially scheduled for May 21. At the outset of that hearing, Judge Jansz explained to defendant that as a *pro se* litigant, he was required "to follow all of the same rules that a lawyer does at a hearing." Shortly after that, defendant notified the court and the State for the first time that he was unable to access all of the files on the computer disks the State had tendered in response to his discovery motion. When the trial court asked defendant if he had previously contacted the State about that problem, he admitted that he had not. The court then directed the parties to review the tendered disks during the lunch recess.

¶ 28    After that recess, the parties reported that the State had been able to open all of the files on the disks without problem and that defendant had been able to view the photographs and videos on them. Those files included videos showing defendant's arrest at the scene of the traffic accident from the perspective of the arresting officer and a video taken while he was in the booking room at the police station. Recognizing the potential significance of defendant's

10

inability to review the files, the trial judge asked whether he wanted to proceed with the hearing that day or reschedule it.

¶ 29    Defendant indicated that he needed more time to review the evidence on the disks and asked the judge to attribute the delay to the State because it was a discovery matter. He also stated that the State was obliged to tender a hospital surveillance video and any other videos that might have shown the perspective of other officers present at the accident scene. After reminding the trial court of its original admonition that defendant had to be held to the same standard as an attorney, the State explained that it had already fulfilled its discovery duty by tendering everything in its file. Because defendant was not prepared to proceed to hearing and needed a continuance to have time to review the tendered evidence, the State argued that the delay should be attributed to him.

¶ 30    Before issuing its ruling, the trial judge reviewed the sequence of events. He noted that the State's discovery was completed on May 4, a day after defendant's petition to rescind was filed. In its answer to discovery, the State had identified between 10 and 12 items that it had sent to defendant. The trial judge noted that the State had submitted its discovery "well, well in advance" of the May 31 deadline and that defendant had not notified it before the May 21 hearing of the trouble he was having with the disks or his belief that the State's discovery was incomplete. The court concluded that under those circumstances, it was unfair to attribute the delay to the State. The judge also told defendant that he could subpoena the hospital surveillance video if he believed it was necessary to his case because the State had no duty to provide materials from third parties that were not in its possession. To accommodate the trial court's schedule and give defendant time to review the disks, the hearing on his petition to rescind was rescheduled to June 7.

11

¶ 31    After carefully reviewing that chronology, we conclude that the trial court's finding that the delay was occasioned by defendant's inaction was not against the manifest weight of the evidence. Placing the burden on defendant to contact the State prior to the hearing so it could timely address any problems was not unreasonable. Moreover, the trial court's conclusion that the State could not fairly be held responsible for failing to investigate and correct purported defects in its discovery response when it was not aware of those problems before the May 21 hearing was not unreasonable, arbitrary, or unrelated to the evidence. *In re D.F.*, 201 Ill. 2d at 498.

¶ 32    Defendant next argues that delays that occurred later in the proceedings should have been attributed to the State. The record reveals that Judge Jansz recused himself on June 7, the date of the rescheduled hearing, and the case was reassigned to Judge Raccuglia. Because defendant planned to file a motion for substitution of judge as a matter of right, he agreed to continue the hearing until July 12. Defendant then filed a substitution motion on July 7, and the case was reassigned to Judge H. Chris Ryan, Jr. on July 8.

¶ 33    At the July 12 hearing, the State announced that it was ready to proceed, but defendant stated he was not ready due to additional "discovery issues," namely the absence of a 911 call tape. The State explained that the audio of the 911 call had been requested from the Peru Police Department on May 24, but it had not received the tape. After conferring with a Peru police officer present at the courthouse, the State reported that the delay appeared to be related to the police department's move, which had complicated contact with dispatch. The State also noted that defendant had not contacted it about the missing tape despite having several weeks before the July 12 hearing in which to do so.

¶ 34    To accommodate defendant's request for the 911 tape, the trial court continued the hearing until August 13, a delay that defendant asked to be attributed to the State. The State, in turn, argued that defendant had repeatedly failed to contact it about discovery issues prior to scheduled hearings even after Judge Jansz clarified that any additional discovery requests were "on his clock." Judge Ryan reserved the question of attribution "for a later date," finding no "vexatious attitude on the State's part" and averring that the State would do what it could to obtain the 911 tape for defendant. On August 10, defendant filed his "Motion to Rescind Statutory Summary Suspension," alleging that he had not received a timely hearing on his petition to rescind.

¶ 35    The parties appeared at the August 13 hearing on defendant's petition, with defendant stating at the outset that he was not prepared to proceed because his witness from the Perfectly Flawed Foundation was not present. He later admitted that he had also not issued any subpoenas for the other witnesses he intended to call at the hearing on his petition to rescind. Defendant agreed to an August 20 status hearing at which the parties would set a date to hear his petition to rescind so that he would have time to determine when his witnesses were available.

¶ 36    In lieu of addressing his petition to rescind, defendant requested that the parties proceed on his motion to rescind, and the State agreed. Defendant argued that "roughly 100 days" had passed since the clock began to run on the hearing deadline and that he had agreed to only a 35-day continuance. Therefore, the August 13 hearing date was held at least 65 days after the start of the statutory clock, 35 days after the 30-day deadline. The State countered that "every continuance and multiple hearings that we have had have been on the motion of the defendant." After hearing the parties' arguments, Judge Ryan denied defendant's motion to rescind based on untimeliness.

13

¶ 37 Our analysis is partially guided by our supreme court's decision in a case with facts similar to those here. In *People v. Smith*, 172 Ill. 2d 289 (1996), the supreme court considered whether a hearing on the defendant's petition to rescind his statutory summary suspension was timely when he had filed a motion for substitution of judge. Holding that the defendant's hearing was timely when it began within 30 days of the grant of his substitution motion, the court declared that "[w]hen a defendant requests a substitution of judge, the 30-day requirement for holding the hearing does not begin to run until the newly assigned judge has been furnished with a request for the rescission hearing." *Id.* at 295-96.

¶ 38 Here, defendant's substitution motion was granted on July 8, the day after it was filed, and Judge Ryan was assigned to the case. Under the *Smith* analysis, the 30-day deadline for the rescission hearing would have been August 7. In this case, however, defendant had already agreed to continue the hearing on his petition to rescind until July 12, four days after the grant of defendant's substitution motion. Therefore, July 12 was the proper starting point for calculating the new, post-substitution, deadline. Based on that date, the new deadline for the rescission hearing was August 11. Notably, defendant's motion to rescind alleging untimeliness was filed the day before that deadline.

¶ 39 The parties next appeared before the trial court on August 13. The transcript from that hearing reveals that defendant was still unprepared to proceed to hearing on his petition to rescind. As of August 13, he had not issued subpoenas for any of the witnesses he intended to call at the rescission hearing and had not yet determined when his witness from the Perfectly Flawed Foundation was available. Defendant's agreement to a status date of August 20 to give him more time to schedule his witnesses also supports our conclusion that he was not prepared to proceed to hearing on his petition to rescind on either August 13 or August 11.

14

¶ 40 Thus, the delay was not properly attributable to the State, which had appeared ready to proceed at each of the prior scheduled hearings. The conclusion that the only delay after the July 12 "restart" date was attributable to defendant because he was not prepared to proceed to hearing on his petition to rescind by the August 11 deadline is not unreasonable, arbitrary, or not based on the evidence. See *In re D.F.*, 201 Ill. 2d at 498. Accordingly, the trial court's decision to deny defendant's motion to rescind was not against the manifest weight of the evidence.

¶ 41                                    III. CONCLUSION

¶ 42 For the foregoing reasons, we affirm the La Salle County circuit court's denial of defendant's motion to rescind his statutory summary suspension.

¶ 43 Affirmed.

¶ 44 JUSTICE BRENNAN, specially concurring:

¶ 45 While I agree with the majority that the 30-day deadline for a statutory summary suspension hearing was not violated in this case, I specially concur because I view the procedural posture of the case more simply as it relates to calculating that no violation occurred.

¶ 46 Where a defendant files a substitution of judge motion after filing a petition to rescind the statutory suspension, the 30-day hearing requirement restarts at day 1 and does not commence running until "the newly assigned judge has been furnished with a request for the rescission hearing." *Smith*, 172 Ill. 2d at 296-96; see also, *People v. Joiner*, 174 Ill. App. 3d 927, 929 (1988); *People v. Trainor*, 156 Ill. App. 3d 918, 922-23 (1987). Here, the post-substitution judge was assigned the case on July 8, making the 30-day deadline for hearing August 7, absent any continuances attributable to the defendant. Four days later, on July 12, the State answered ready for a previously-set rescission hearing and defendant asked for a continuance to August 13 so that he could obtain a 911 tape, which the court properly attributed to defendant. Thus, the 30-

15

day period was tolled from July 12 to August 13, making the complained of August 13 hearing date well within the mandatory 30-day range.